UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
ANNIE WATSON,                          :
                                       :
                    Plaintiff,         :
                                       :02 Civ. 02739 (KMW)(THK)
          -against-                    :
                                       :     **REPORT AND**
                                       :     **RECOMMENDATION**
E.S. SUTTON, INC.,                     :
                                       :
                                       :
                    Defendant.         :
---------------------------------------X
**FROM: THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**
**TO: HON. KIMBA M. WOOD, UNITED STATES DISTRICT JUDGE.**

Plaintiff, Annie Watson, commenced this employment discrimination action against Defendant E.S. Sutton, Inc. ("ESS") in 2002. A nine-day jury trial was held before the Honorable Kimba M. Wood, U.S.D.J., and on April 30, 2004, a jury determined that ESS had retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) ("Title VII"), New York Executive Law § 296, and the New York City Administrative Code, § 8-502 et. seq. See Watson v. Sutton, 02 Civ. 2739 (KMW) (THK), 2005 WL 2170659, at *1 (S.D.N.Y. Sept. 6, 2005). The facts at trial showed that Plaintiff, previously employed at ESS, was terminated and retaliated against for sending her supervisor a letter requesting that action be taken against one of Plaintiff's coworkers, who had made sexually explicit comments to Plaintiff. See id. The jury awarded Plaintiff $500,000 in emotional distress damages, $884,000 in back-pay and benefits, $550,000 in front-pay and benefits, and $2,500,000 in punitive

damages, for a total of $4,434,000. <u>See</u> <u>id.</u> at *14. On September 2, 2005, a post-trial decision by the Court upheld the jury's findings of liability, but ordered remittitur of emotional distress damages from $500,000 to $120,000, and remittitur of punitive damages from $2,500,000 to $717,000. <u>See</u> <u>id.</u> at *24. The Court did not alter the compensatory damages for front and back-pay awarded by the jury. <u>See</u> <u>id.</u>

During the course of this litigation and the administrative proceeding that preceded it, Plaintiff was represented by a series of different counsel. In March 2000, Plaintiff retained Outten & Golden ("O&G") to represent her. (<u>See</u> Memorandum of Law in Support of Application for Attorneys' Fees, dated Nov. 21, 2005 ("O&G Mem."), at 1.) O&G filed a charge with the United States Equal Employment Opportunity Commission (the "EEOC"), in November 2000, alleging unlawful retaliation. (<u>See</u> <u>id.</u>) O&G continued to represent Plaintiff until March 2002, at which time she retained Gary Ireland, Esq., as her attorney. (<u>See</u> <u>id.</u>) Ireland began representing Plaintiff after she received a favorable "Probable Cause" finding from the EEOC. (<u>See</u> Declaration of Gary E. Ireland, Esq. in Support of Application for Attorneys' Fees, dated Nov. 21, 2005 ("Ireland Decl."), ¶ 2.) Ireland filed the Complaint in this Action on April 9, 2002 (<u>see</u> O&G Mem. at 1), and continued to represent Plaintiff until September 2003 (<u>see</u> Ireland Decl. ¶ 2). Ireland was assisted in his representation of Plaintiff by Saul L.

Glass, Esq. (See Declaration of Saul L. Glass, Esq. in Support of Application for Attorneys' Fees, dated Nov. 17, 2005 ("Glass Decl."), attached as Exhibit ("Ex.") 3 to Ireland Decl., ¶ 2.) Finally, Plaintiff retained the law firm of Barry, McTiernan & Moore ("BMM") in May 2003. (See Affidavit of Roger McTiernan, Esq., dated Sept. 26, 2005 ("McTiernan Aff."), ¶ 2.) BMM represented Plaintiff through extensive pre-trial proceedings, the nine-day trial that began on April 30, 2004, and post-trial motions. (See id. ¶ 4.)

Plaintiff now moves for attorneys' fees and costs, on behalf of each of the three firms which represented Plaintiff. Plaintiff's motion was referred to this Court for a Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1)(B) and (C).

## DISCUSSION

I. Applicable Law

"In any action or proceeding under [Title VII] the court, in its discretion, may allow the prevailing party, other than the [EEOC] or the United States, a reasonable attorney's fee." Farias v. Instructional Sys., Inc., 259 F.3d 91, at 102 -103 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-5(k)). Under Title VII, reasonable attorneys' fees, including expert fees, are awarded as part of the costs to a prevailing plaintiff. See Am. Fed. of State, County and Mun. Employees, AFL-CIO (AFSCME) v. County of Nassau, 96 F.3d 644,

650 (2d Cir. 1996); <u>Reiter v. Metropolitan Transp. Auth. of New York</u>, 224 F.R.D. 157, 163 (S.D.N.Y. 2004). Further, attorneys' fees may be awarded for "time spent on administrative proceedings to enforce the civil rights claim prior to the litigation." <u>See</u> <u>N. Carolina Dept. of Transp. v. Crest St. Comm. Council, Inc.</u>, 479 U.S. 6, 15, 107 S. Ct. 336, 341 (1986); <u>see also</u> <u>Counsel v. Dow</u>, 849 F.2d 731, 740 (2d Cir. 1988). "To obtain the fees, the administrative proceeding must be 'useful and of a type ordinarily necessary to secure the final result obtained from the litigation.'" <u>Tsombanidis v. W. Haven Fire Dep't</u>, 352 F.3d 565, 581 (2d Cir. 2003) (citation omitted).

The starting point for determining reasonable attorneys' fees is the "lodestar" method, in which the court multiplies the number of hours reasonably spent by an attorney or paralegal, by an appropriate hourly rate. <u>See</u> <u>City of Burlington v. Dague</u>, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641 (1992); <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983); <u>Orchano v. Advanced Recovery, Inc.</u>, 107 F.3d 94, 98 (2d Cir. 1997). To determine whether time was reasonably spent, the court must evaluate the tasks and the time documented in counsel's contemporaneous time records in light of its general experience and its experience with the case. <u>See</u> <u>Clarke v. Frank</u>, 960 F.2d 1146, 1153 (2d Cir. 1992); <u>New York State Ass'n for Retarded Children v. Carey</u>, 711 F.2d 1136, 1146-48 (2d Cir. 1983); <u>Santa Fe Natural Tobacco Co. v. Spitzer</u>,

4

Nos. 00 Civ. 7274 (LAP), 00 Civ. 7750 (LAP), 2002 WL 498631, at *3 (S.D.N.Y. Mar. 29, 2002). The reasonable hourly rate is ordinarily determined by the prevailing rates in the community for similar services by lawyers with comparable skill, experience, and reputation. See Blum v. Stenson, 465 U.S. 886, 895 & n.11, 104 S. Ct. 1541, 1547 & n.11 (1984); Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998). The community the district court should consider to determine the lodestar figure is "'the district in which the court sits.'" Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997) (quoting Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983). In deciding what reasonable rates are in the community, the court may rely upon its own knowledge of private firm hourly rates. See Miele v. New York State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987); Santa Fe Natural Tobacco, 2002 WL 498631, at *3.

A fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, 711 F.2d at 1148. If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought. See Hensley, 461

U.S. at 434, 103 S. Ct. at 1939-40; <u>Kirsch v. Fleet Street, Ltd.</u>, 148 F.3d 149, 173 (2d Cir. 1998); <u>New York State Ass'n for Retarded Children</u>, 711 F.2d at 1146.

II. <u>Plaintiff's Application for Attorneys' Fees</u>

The favorable jury verdict and the Court's post-trial decision upholding the jury's finding of liability makes Plaintiff a "prevailing party" in this litigation. Thus, Plaintiff is entitled to recover reasonable attorney's fees as part of the costs assessed against ESS.

BMM filed an initial post-trial motion seeking attorneys' fees and costs on behalf of Plaintiff, on September 25, 2005. The initial application seeks BMM's fees in the amount of $125,115.85, and costs of $14,959.85. (<u>See</u> McTiernan Aff. ¶ 13.) On November 21, 2005, Ireland filed a Declaration in Support of Plaintiff's Application, seeking an additional $120,213 in fees and $5,899.90 in costs on behalf of himself and Glass. (<u>See</u> Ireland Decl. ¶ 20; Glass Aff. ¶ 15.)[1] O&G also filed a declaration on November 21, 2005, seeking $15,156 in attorneys' fees and $74.91 in costs. (<u>See</u> Notice of Motion for Attorneys' Fees, dated Nov. 21, 2005.) In

_____

[1] Ireland's declaration summarizes his fees as $102,383 and Glass's fees as $11,640, for a total of $114,033. (<u>See</u> Ireland Decl. ¶ 15.) However, Glass, in his declaration, requests 59.4 hours at his current rate of $300 per hour, which totals $17,820. (<u>See</u> Glass Decl. ¶¶ 11, 14-15.) The Court has based the fee application for Glass's work on the hours and hourly fee requested in his Declaration. Thus, the Court has treated Plaintiff's application for fees on behalf of Ireland and Glass as requesting a total amount of $120,213.

total, Plaintiff is seeking $260,484.85 in attorneys' fees and $20,934.66 in costs.

In declarations supporting Plaintiff's application for attorneys' fees, Plaintiff's present and former attorneys have submitted affidavits and invoices describing the services performed in connection with their representation of Plaintiff. The affidavits set forth the experience of each of the attorneys who performed legal services for Plaintiff, and provide a description of the work performed.

While Defendant does not dispute that Plaintiff is entitled to fees and costs, Defendant contends that an award for the full amount of fees submitted by Ireland/Glass and BMM is not warranted.

A. <u>O&G</u>

Initially, the Court notes that the hours and fees requested by O&G vary markedly between its Notice of Motion, its Declaration in Support of Plaintiff's Motion, and as reflected in the invoices attached to its declaration. O&G's application for attorney's fees requests $15,156.00. (<u>See</u> Notice of Motion for Attorneys' Fees, dated Nov. 21, 2005.) Yet, O&G's Declaration in Support of Plaintiff's Motion for Attorneys' Fees includes a summary of the hours worked and fees requested as follows:

| Attorney | Position | Rate | Hours | Total |
|----------|----------|------|-------|-------|
| Anne Golden, Esq. | Partner | $500 | 15.2 | $7,600 |
| Kathleen Peratis, Esq. | Partner | $500 | 3.8 | $19,561 |
| Anjana Samant, Esq. | Second Year | $210 | 2.3 | $483 |

(See Declaration of Anne Golden, Esq. in Support of Plaintiff's Motion for Attorneys' Fees, dated Nov. 21, 2005, ¶ 20.)  Clearly, this chart contains mathematical miscalculations, and, in any event, the total fees sought do not correspond to the amount sought in the Notice of Motion.  Moreover, the figures in the chart do not correspond with the invoices submitted as exhibits in support of Plaintiff's application.  The invoices reflect that Anne Golden, Esq., billed 25.3 hours and Kathleen Peratis, Esq., billed 3.8 hours on the matter. (See Outten & Golden LLP Invoices for Professional Services, dated Apr. 6, 2000 through Nov. 21, 2005 ("O&G Invoices"), attached as Ex. 2 to Golden Decl.)  The invoices do not document any services performed by Anjana Samant, Esq.[2]  For purposes of calculating O&G's fees, the Court has relied on the O&G Invoices as the most reliable record of the hours spent on this litigation.  Thus, the Court has treated O&G's request for fees as seeking $12,650 for Golden (25.3 x $500) and $1,900 for Peratis

---

[2] The invoices also reflect a total of .8 hours of work by three other individuals. (See O&G Invoices.)  Because the Court does not have any information as to whether these individuals are attorneys or paralegals, and the Court is unaware of the hourly rate at which these individuals bill, the Court has not included this time in its fee calculation.

8

(3.8 hours x $500) for a total of $14,550.

Defendant has not filed any objection to the fees requested by O&G. O&G has submitted bills for 29.1 hours of attorney time, which was spent in discussions with Plaintiff, drafting a demand letter, conducting legal research, drafting Plaintiff's EEOC Charge and affidavit, preparing materials for and following up with the EEOC, coordinating with Ireland regarding Plaintiff's case, and working on the fee petition. (See O&G Invoices.) The Court finds the less than thirty hours spent on case intake and preparation for an administrative proceeding, which resulted in a finding of probable cause for Plaintiff, reasonable. (See Golden Decl. ¶ 2.)

The majority of the work, which related to the EEOC charge, was conducted by Golden and Peratis in 2000 and 2001. In 2000, Golden (and presumably Peratis) billed at a rate of $325 per hour, and in 2001, she billed at a rate of $360 per hour. However, Golden and Peratis request their current hourly rate of $500. The Second Circuit has stated that "in order to provide adequate compensation where the services were performed many years before the award is made, the rates used by the court to calculate the lodestar should be 'current rather than historic hourly rates.'" Gierlinger, 160 F.3d at 882 (quoting Missouri v. Jenkins, 491 U.S. 274, 284, 109 S. Ct. 2463, -- (1989)). O&G was retained by Plaintiff in March 2000, and filed an EEOC Complaint on behalf of Plaintiff in November 2000. (See O&G Mem. at 1.) The six-year

delay between the work performed and the fee application is sufficient to justify using Golden's and Peratis's current hourly rate of $500.

Further, although $500 is the highest hourly rate requested by any of Plaintiff's attorneys, it is within the range of rates charged by practitioners with Golden's and Peratis's experience who practice in the Southern District of New York. Golden and Peratis each have approximately thirty years of legal experience, and are partners at O&G, which has an established plaintiffs' employment practice. (See O&G Mem. at 7.) Cf. Wilson v. Nomura Sec. Int'l Inc., No. 01 Civ. 9290 (RWS), 2002 WL 1560614, at *3 (S.D.N.Y. July 15, 2002) (approving unchallenged hourly rate of $525 in discrimination action for a founding partner of plaintiff's employment firm), rev'd in part on other grounds, 361 F.3d 86 (2d Cir. 2004); Green v. Torres, No. 98 Civ. 8700 (JSR), 2002 WL 922174, at *1 (S.D.N.Y. May 7, 2002) (approving a rate of $400 per hour four years ago to an accomplished civil rights litigator with more than twenty years of experience); Kuper v. Empire Blue Cross and Blue Shield, No. 99 Civ. 1190 (JSG) (MHD), 2003 WL 23350111, at *9 (S.D.N.Y. Dec. 18, 2003) (awarding, in 2003, an experienced employment law attorney in a two-person firm $425 per hour). Moreover, the firm regularly charges this rate to paying clients who retain it on an hourly fee basis. (See Golden Decl. ¶¶ 22-23.) See Lilly v. County of Orange, 910 F. Supp. 945, 949 (S.D.N.Y.

1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate.").

Therefore, the Court recommends awarding Plaintiff $14,500 in attorneys' fees for the work performed by O&G.

B.  Ireland/Glass and BMM

Defendant vigorously opposes both Ireland's and BMM's fee applications, challenging the reasonableness of their hourly rates, the amount of time expended, and the tasks for which fees are requested.

1. Defendant's Objections

a.  Hourly Rates

Defendant argues that Ireland's, Glass's and BMM's billing rates are not substantiated by their experience. (See Declaration of Geri S. Krauss, Esq. in Opposition to Plaintiff's Motion for Attorney's Fees and Costs, dated Dec. 7, 2006. ("Krauss Decl."), ¶ 12.)  This argument is without merit.  The rates charged by these attorneys are not excessive for an employment discrimination/retaliation case given their background and experience.

i. Ireland/Glass

Ireland filed this action on behalf of Plaintiff, conducted pretrial discovery, and represented Plaintiff at two mediations. Glass assisted Ireland in litigating the case.  Ireland's invoices reflect 330.3 attorney hours. (See Annie Watson Time Records, dated

Mar. 15, 2002 to Oct. 6, 2004 ("Ireland Invoices"), attached as Ex. 2 to Ireland Decl.)  These hours were spent reviewing Plaintiff's file from O&G, meeting with Plaintiff, corresponding with ESS's counsel and the Court, drafting the Complaint, and conducting discovery, which included, <u>inter</u> <u>alia</u>, preparing and responding to discovery requests, attending pretrial conferences, preparing for and attending two mediations, preparing for and taking depositions, bringing discovery disputes to the Court's attention, preparing letters and a motion for, and attending a hearing regarding, spoliation of evidence and perjured affidavits by Defendant. (<u>See</u> <u>id.</u>)  Ireland also billed hours relating to BMM's participation as co-counsel, and in May 2003, billed for trial preparation in coordination with BMM. (<u>See</u> <u>id.</u>)  Ireland's invoices further reflect approximately 9 hours spent on a dispute with BMM over their representation of Plaintiff. (<u>See</u> <u>id.</u>)  Ireland billed at a rate of $310 per hour. (<u>See</u> Ireland Invoices.)

Glass requests fees for 59.4 hours spent reviewing and revising the Complaint, reviewing correspondence to the Court, meeting with Ireland regarding strategy, conducting legal research, drafting jury charges and voir dire, and working with Ireland and BMM on trial preparation in May 2003. (<u>See</u> Glass Decl. ¶ 15; Invoices, dated Apr. 9, 2002 to Sept. 5, 2003 ("Glass Invoices"), attached as Ex. 2 to Ireland Decl.)  The application seeks Glass's current hourly billing rate of $300 (<u>see</u> Glass Decl. ¶ 14),

12

although for 2002 and 2003, the years in which he worked on Plaintiff's case, his hourly rate was $250 and $260 respectively (see Glass Invoices).

Ireland has been practicing law for fifteen years, heads his own firm specializing in employment law, and is a member of the National Employment Lawyers Association. (See Ireland Decl. ¶¶ 4-9.) Glass has been practicing law for twenty years and is of counsel to Ireland's firm. (See Glass Decl. at ¶¶ 3-6.) Glass has extensive experience in the area of employment law and as a litigator. (See id.) Based on their tenure and experience, the Court does not find the billing rates requested by Ireland and Glass excessive. Cf. Brenlla v. LaSorsa Buick Pontiac Chevrolet, Inc., No. 00 Civ. 5207 (JCF), 2002 WL 1059117, at *13 (S.D.N.Y. May 28, 2002) (awarding $345 per hour in successful FLMA case to an attorney with twelve years of experience litigating cases involving labor and employment law); Marisol A. v. Giuliani, 111 F. Supp. 2d 381, at 386 (S.D.N.Y. 2000) (holding a reasonable rate scale for attorneys' fees in civil rights litigation as $350 for attorneys with more than fifteen years of experience, and $300 for attorneys with ten to fifteen years of experience).[3]

### ii. BMM

BMM's invoices document 503.20 hours of attorney and paralegal

---

[3] As with O&G, the Court agrees that Glass is entitled to his currently hourly rate of $300 for work done in 2002 and 2003.

time spent engaging in pretrial discovery, conducting legal research, analyzing documents, conducting research, drafting briefs and motion papers, preparing for and attending hearings, preparing and responding to discovery requests, taking and defending depositions, preparing for and attending the nine-day trial, and researching and drafting post-trial motions. (See Bill History ("BMM's Invoices"), attached as Ex. B to McTiernan Aff.)

The law firm of BMM specializes in high exposure and complex litigation in a wide-range of areas. (See Firm Resume, attached as Ex. C to McTiernan Aff.) BMM's billing rates range from $225 to $300 per hour for the three attorneys who worked on this action. (See McTiernan Aff. ¶ 8; Reply Memorandum of Law in Support of Motion for Attorneys' Fees, dated Nov. 4, 2005 ("BMM Reply Mem."), at 4.) These attorneys include Roger McTiernan, Esq., a name partner at the firm with over forty-five years' experience; Suzanne Halbardier, Esq., a partner with over twenty years' experience specializing in complex litigation, who has tried over fifty cases in state and federal court; and Laurel Wedinger, Esq., an associate with twenty years of experience in civil litigation. (See Firm Resume, attached as Ex. C to McTiernan Aff.; Affidavit of Suzanne Halbardier, Esq., dated Sept. 26, 2005, ¶¶ 3-4; BMM Reply Mem. at 4.) The firm also requests fees for paralegal services at a rate of $80 per hour. (See McTiernan Aff. ¶ 8.)

Defendant contends that these hourly rates are excessive,

because BMM's Firm Resume clearly positions the firm as a defense-side firm, and does not mention employment law specifically. Defendant argues that BMM's billing rate should be lowered because representing a plaintiff is a "clear departure" from the firm's customary practice, and that its rates should be discounted because of its inexperience in employment litigation. (See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for an Award of Attorneys' Fees, dated Oct. 24, 2005 ("Def.'s Mem.), at 7.) The Court disagrees.

As evidenced by the substantial jury verdict in this action and its successful defense of the post-trial motions, BMM's skills and experience, derived from litigating high profile tort and contract cases, were clearly relevant and utilized successfully by BMM in trying Plaintiff's case. Further, BMM stresses that both McTiernan and Halbardier have extensive experience litigating employment and complicated civil rights actions in federal court. (See BMM's Reply Mem. at 2-3.) In light of their experience, the Court finds BMM's attorneys' billing rates reasonable. Cf. Legrand v. New York Rest. Sch., No. 02 Civ. 2249 (PKC) (KNF), 2005 U.S. Dist. Lexis 12080, at *10 (S.D.N.Y. June 14, 2005) (awarding $375 per hour in employment discrimination action); Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 523 (S.D.N.Y. 2002) (finding hourly rates of $375 reasonable for a partner with fourteen years' experience, and $300 reasonable for an associate

with ten years' experience). Further, BMM's hourly rate of $80 for paralegal assistants is not excessive. <u>Cf.</u> <u>Nike, Inc. v. Top Brand Co.,</u> No. 00 Civ. 8179 (KMW) (RLE), 2006 WL 452023, at *4 (S.D.N.Y. Feb. 24, 2006) (awarding paralegal fees at $90 per hour); <u>Nam Yang v. ACBL Corp.,</u> No. 04 Civ. 8987 (LBS), 2006 WL 435720, at *2 (S.D.N.Y. Feb. 22, 2006) (awarding $100 for paralegal work and noting that $100 per hour is "well within the range of paralegal fees recently awarded by other Southern District of New York courts").

### b. <u>Duplication of Efforts between Ireland and Glass</u>

Defendant alleges that Ireland's application reflects duplication of work between himself and Glass. (<u>See</u> Krauss Decl. ¶ 9.) Defendant argues that the majority of Glass's time was spent reviewing correspondence already reviewed by Ireland, reviewing Ireland's written work, and discussing the case with Ireland. (<u>See</u> <u>id.</u>) Defendant maintains that Glass should not be compensated for these activities, because one lawyer would have been adequate. (<u>See</u> <u>id.</u>)

Having reviewed Ireland's and Glass's records side-by-side, the Court does not discern the unnecessary duplication complained of by Defendant. Glass was clearly assisting Ireland in litigating Plaintiff's case, and his assistance in drafting, revising, and conducting research related to the Complaint and the numerous submissions to the Court was reasonable and rarely duplicative of

entries by Ireland. It was also reasonable for Ireland and Glass to meet to discuss litigation and discovery strategy, and for Glass to accompany Ireland to important hearings. It is commonplace for more than one attorney to work on such a case as Plaintiff's. Moreover, any diligent attorney will periodically review the case file, as Glass appears to have done, when an issue arises in an action or before meeting to discuss a matter. The Court does not find Glass's work unnecessary or duplicative of Ireland's. According, Glass's fees should not be reduced on this basis.

### c. Successive Changes in Counsel

Defendant next contends that Plaintiff's fee application includes additional and duplicative charges which have resulted from two successive changes in counsel. (See Krauss Decl. ¶ 7.) Specifically, Defendant argues that it should not have to bear the cost of each new counsel relearning and reviewing the previous counsel's work, because these costs would not have been incurred if changes in counsel had not been made. (See id.)

"Fees for services rendered by successive attorneys may be reimbursed under the fee-shifting statute so long as the fees do not reflect duplicative or otherwise unreasonable work." Paulino v. Upper W. Side Parking Garage, Inc., No. 96 Civ. 4910 (MGC), 1999 WL 325363, at *3 (S.D.N.Y. May 20, 1999); accord Broome v. Biondi, 17 F. Supp. 2d 230, 236 (S.D.N.Y. 1997). However, where a plaintiff has made a decision to replace counsel during the course of a

litigation, courts in this district have reduced the amount of attorneys' fees recovered where the replacement caused unnecessary duplication of efforts. <u>See e.g.</u>, <u>Annis v. County of Westchester</u>, 939 F. Supp. 1115, 1123 (S.D.N.Y. 1996), <u>vacated in part on other grounds</u>, 136 F.3d 239 (2d Cir. 1998).

In March 2002, Ireland spent 4.2 hours reviewing Plaintiff's file before drafting the Complaint, and then spent another 2.8 hours reviewing the Complaint and documents provided by O&G. (<u>See</u> Ireland Invoices.) Glass did not bill any time for reviewing O&G's file. BMM billed a total of 13.0 hours from May 22 to May 25, 2003 as "preparing case for trial, review of file materials." (<u>See</u> BMM Invoices.)

The Court finds the 7.0 hours Ireland spent working with the file in preparation for drafting the Complaint in this action reasonable and not excessive. Plaintiff's prior counsel had only participated in the administrative proceeding before the EEOC, and any attorney would have spent time reviewing the file before drafting the Complaint. The Court also finds the 13.0 hours billed by BMM reasonable and necessary, as this time involved getting up to speed on the case at a point when the case was scheduled for trial and pretrial submissions were due. Any reasonable attorney would have carefully reviewed the case file at that point in the litigation. The Court does not find a reduction necessary. <u>Cf.</u> <u>Broome</u>, 17 F. Supp. 2d at 236 (holding that hours spent by new lead

counsel on studying the case were reasonable, and declining to reduce hours for duplication of effort).

      Defendant also objects to certain time billed by Ireland and BMM related to BMM's substitution as counsel in May 2003, and time billed for disputes between Ireland and BMM during the period of September 2003 to May 2004. Neither party has cited any authority on this point.

      In connection with retaining BMM as trial counsel, Plaintiff was required to submit a motion for substitution of counsel, accompanied by an affidavit indicating that BMM would be ready to proceed on the scheduled trial date. (<u>See</u> Memorandum Endorsed Order, dated May 6, 2003.) In May 2003, Ireland billed 18.7 hours in connection with retaining BMM as trial counsel. (<u>See</u> Ireland Invoices.) Ireland documents this time as spent negotiating the new representation, drafting and filing a substitution of counsel motion, preparing for and attending a hearing related to substitution of counsel, and working on a response to BMM's motion asking the Court to direct Ireland to turn over Plaintiff's file. (<u>See</u> <u>id.</u>) Glass spent 23.3 hours assisting Ireland by planning, researching, and drafting the motion for substitution of counsel and the response to BMM's motion. (<u>See</u> Glass Invoices.) BMM has submitted records reflecting only approximately 5.5 hours expended on the substitution of counsel, which entailed preparing the stipulation, motion, and affidavit, less than an hour of legal

research, and attending an in-court conference and a telephone conference regarding the motion. (See BMM Invoices.)

The Court recognizes that it is not uncommon to retain trial counsel when it appears that a case will proceed to trial, and that Plaintiff was required to file a motion in order to effect the substitution. (See Memorandum Endorsed Order, dated May 7, 2003.) Nevertheless, many clients retain the same attorney for pretrial matters as well as trial. The attorneys' fees arising from the substitution of counsel resulted purely from a strategic choice by Plaintiff. The substitution of counsel was not necessary in order to litigate Plaintiff's claims, and Defendant should not have to bear these costs. The Court recommends reducing the fee award by $5,797 (18.7 hours) for Ireland, by $6,990 (23.3 hours) for Glass, and $1,333 (5.46 hours) for BMM, which are the fees incurred in relation to the substitution of counsel.

The Court further agrees that Defendant should not have to pay for time spent on disputes between Ireland and BMM as co-counsel for Plaintiff from September 2003 until May 2004. Defendant was not a party to these disputes, in which Ireland appears to have alleged that BMM was not keeping him apprised of developments. (See Memorandum Endorsed Order, dated Nov. 19, 2005.) Ireland billed approximately 9 hours and BMM billed 12.5 hours on such disputes.

(See Ireland Invoices; BMM Invoices.)[4]  Thus, the Court recommends

a reduction in fees of $2,790 (9.0 hours) for Ireland and a

reduction of $3,380 (12.5 hours) for BMM.

      d.  <u>Time Spent on Trial Preparation in May 2003</u>

Defendant disputes the time Ireland and BMM spent on trial

preparation in May 2003.  With respect to Ireland, Defendant argues

that it should not have to pay for the time Ireland spent on trial

preparation between May 14 and May 21, 2003, because Ireland and

BMM's substitution of counsel papers indicate that BMM and Ireland

began working on Plaintiff's substitution of counsel on April 30,

2003.[5]  Defendant also contends that it should not be responsible

for BMM's hours billed for trial preparation from May 22 to May 30,

2003, because no trial date had yet been set by the Court. (<u>See</u>

Def.'s Mem. at 10.)  The Court disagrees with Defendant on both

points.

As evidenced by the filings made with the Court and Ireland's

time records, Ireland remained involved in this action after BMM

filed an appearance. (<u>See, e.g.,</u> Memorandum Endorsed Order, dated

_____

[4] Defendant claims that BMM seeks "a minimum of 37.67 hours regarding its dispute with Ireland." (<u>See</u> Def.'s Mem. at 9.) Having throughly examined the records submitted by BMM, the Court was able to identify only 12.5 hours billed for disputes with Ireland. (<u>See</u> BMM Invoices.)

[5] Defendant also maintains that Glass billed 9.7 hours for trial preparation, presumably around the same time. (<u>See</u> Krauss Decl. ¶ 10.)  However, upon review of Glass's May 2003 invoices, the Court was unable to identify any entries related to trial preparation.

Nov. 19, 2003) (directing BMM to keep Ireland advised of all developments in Plaintiff's case as soon as they occur.)  More significantly, BMM did not file a Notice of Appearance in this action until May 22, 2003. (<u>See</u> Notice of Appearance by Roger P. McTiernan, filed May 22, 2003.)  Thus, it was reasonable for Ireland to continue actively litigating the action until BMM officially appeared as counsel.  Ireland's Invoices do not account for any work specifically directed at trial preparation after BMM's appearance on May 22, 2003.

Moreover, although the case was removed from the trial-ready calendar on May 6, 2003, pre-trial submissions were due on May 12, 2003. (<u>See</u> Memorandum Endorsed Order, dated May 6, 2003.)  It appears that the parties did not meet this deadline, because BMM's billing records reflect a telephone conference on May 29, 2003, with Defendant's counsel, regarding the pre-trial order. (<u>See</u> BMM's Invoices).  BMM's billing records show that Plaintiff submitted her portion of the pre-trial order to the Court on May 30, 2003. (<u>See</u> <u>id.</u>)  Thus, the work done by Ireland and BMM on trial preparation in May 2003 was necessary and reasonable, given that the case was on trial-ready status up until the beginning of the month, and that Plaintiff submitted her portion of the pre-trial order on May 30, 2003.

<u>e. Redundant and Unnecessary Hours by BMM</u>

Finally, Defendant challenges one billing entry by BMM as

duplicative, and numerous entries as unnecessary.

BMM's invoices reflect a duplicate entry by McTiernan for a meeting with Plaintiff on April 30, 2003. Halbardier billed one hour for attending the meeting, while McTiernan has two separate entries for the meeting — the first for one and one-half hours and the second for two hours. Plaintiff consents to a reduction for this mistaken entry. (<u>See</u> BMM's Reply Mem. at 7.) Accordingly, the second two-hour entry is redundant and $600 should be deducted from Plaintiff's fee award.

Defendant also challenges much of the time billed as legal research by Halbardier and Wedinger, claiming that Halbardier's billing entries lack sufficient detail, and that the research done by Wedinger could have been done more efficiently by a more junior attorney. (<u>See</u> Def.'s Mem. at 9-10.) Upon review, the Court finds Halbardier's billing records sufficiently detailed, and the hours spent reasonable for the types of topics she was researching. (<u>See, e.g.,</u> BMM Invoices) (billing .40 hours on punitive damages research on Apr. 30, 2004; .60 hours researching <u>quantum</u> <u>meruit</u> and lien charges on May 9, 2003; 1.0 hours researching Rule 37 sanctions for discovery abuses, and 1.0 hours researching admissibility of EEOC probable cause finding on May 27, 2003; 2.00 hours researching  shifting burdens under mixed motive theory and pretext on May 29, 2003.) The entries by Wedinger, who has the lowest billing rate of the BMM attorneys staffed on this case,

include 6.0 hours for researching federal case law, 2.5 hours researching local EEOC rules, regulations, and procedures, 2.5 hours researching damages, and 2.0 hours on weight of the evidence research. While these entries are admittedly less detailed that Halbardier's, the Court does not credit Defendant's contention that this research could have been done more efficiently and effectively by a more junior attorney. Therefore, no reduction in the hours spent by Halbardier and Wedinger on legal research is necessary.

Defendant next claims that BMM is not entitled to compensation for its work on a motion for sanctions against Defendant that was never filed. (See Def.'s Mem. at 9.) In late May and early June 2003, BMM spent 45.7 hours on a motion for sanctions against Defendant. (See BMM Invoices.) Plaintiff responds that the motion for sanctions was indeed considered by the Court, but ultimately denied. (See BMM's Reply Mem. at 6.) The docket confirms that Plaintiff submitted her motion for sanctions to the Court (see Memorandum Endorsed Order, dated March 19, 2004), and BMM is entitled to fees for the hours spent preparing the motion.

The Court finds the remainder of Defendant's arguments for a reduction in BMM's fees without merit. Plaintiff received a favorable multi-million dollar verdict after a nine-day trial, and BMM's decision to have two attorneys present at trial to litigate the case was appropriate. See New York State Ass'n for Retarded Children, 711 F.2d at 1146 ("Prevailing parties are not barred as

a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist."); cf. Gilmore v. Bergin, No. 3:95CV01838 (DFM), 1998 WL 1632526, at *9 (D. Conn. Sept. 22, 1998) (refusing to reduce plaintiff's counsels' fees for using two attorneys to try wrongful termination case); Bridges v. Eastman Kodak Co., No. 91 Civ. 7985 (RLC), 1996 WL 47304, at *6 (S.D.N.Y. Feb. 6, 1996) (approving attorneys' fees for plaintiff's three trial attorneys in a sexual harassment case, and stating, "[w]hile it is true that redundant work should not be billed, many tasks in fact require or benefit from the attention of more than one attorney. Attendance at trial, in this case, was such a task."). Defendant's argument that this was not a particularly difficult single plaintiff case that required more than one attorney is belied by the fact that Defendant also had two attorneys present at trial. (See BMM's Reply Mem. at 5.)

Further, the Court sees no reason for the across-the-board percentage cut requested by Defendant. (See Def.'s Mem. at 11-13.) BMM's fee application is well-documented, and the Court has recommended specific downward adjustments for unrecoverable hours where appropriate. In all other respects, BMM's fee request is eminently reasonable. Although this Court was not involved in the trial of this action or the pretrial proceedings in which BMM was involved, the Court notes that BMM ushered Plaintiff's case through

the close of discovery, a motion for sanctions, motions in limine, a nine-day trial, and post-trial motions. The defense of the action by Defendant was vigorous. In addition, Plaintiff's attorneys achieved complete success for their client, resulting in a jury verdict of approximately $4,434,000. BMM also successfully defended against Defendant's Motion For a New Trial, to Alter Judgment, and Amend/Correct Judgement, and/or for Remittitur. The Court upheld both the jury's verdict as to liability, and the amount awarded by the jury for front and back pay, ordering remittitur only on emotional damages and punitive damages. See Watson, 2005 WL 2170659, at *24. Plaintiff's reduced recovery still totaled over two million dollars.

2. Summary of Fees Awarded to Ireland, Glass and BMM

The Court recommends that Plaintiff be granted fees of $104,636.00 for Ireland/Glass, and $119,802.85 for BMM as follows:

Ireland/Glass:

Total request: $120,213.00

Deductions:      $(5,797.00) - Ireland, Substitution of
                                        Counsel
                 $(6,990.00) - Glass, Substitution of Counsel
                 $(2,790.00) - Ireland, Dispute with BMM

Adjusted Award: $104,636.00


BMM:

Total Request: $125,115.85

Deductions:      $(1,333.00) - Substitution of Counsel
                 $(3,380.00) - Dispute with Ireland

26

$(600.00)   - Duplicative Billing

Adjusted Award: $119,802.85

Therefore, the Court recommends awarding Plaintiff total attorneys' fees of $238,938.85 for the fees of O&G, Ireland/Glass, and BM&M.

III. Plaintiff's Application for Costs

Each of Plaintiff's attorneys have applied for costs related to the prosecution of this action.  O&G requests $79.14 in costs for filing fees, facsimile fees, postage and copies. (See O&G's Mem. at 12; Client Ledger to October 31, 2005, dated Nov. 21, 2005, attached as Ex. 6 to Golden Decl.)  Ireland requests costs of $5,466.22 for filing and service of process fees, postage, witness fees, deposition fees, transcript fees, expert witness fees, copies, and facsimiles, and Glass has requested costs of $433.68 for travel expenses and "computer assisted research" charges. (See Ireland Decl. ¶ 20; Disbursements - Annie Watson, attached as Ex. 2 to Ireland Decl.; Glass Invoices.)  BMM has submitted costs of $14,959.19, which include $8,212.50 in fees paid to its economic expert, $5,719.19 in investigator fees, and $1,027.50 for copies, travel expenses, and reporter fees. (See McTiernan Aff. ¶ 13; BMM Invoices.)

Defendant does not dispute the $79.14 in costs submitted by O&G.  However, Defendant objects to the costs submitted by Ireland and BMM as set forth below.

A. Expert Witness Fees

27

Defendant contests BMM's and Ireland's request for reimbursement of expert fees. (See Def.'s Mem. at 14; Krauss Decl. ¶ 14.) Defendant maintain that Ireland and BMM are not entitled to expert fees, because they failed to submit expert invoices showing a breakdown of the number of hours spent by the expert, the expert's hourly rate, and the nature of the work performed. (See id.) As part of its Reply, BMM submitted detailed invoices from its economic expert witness. (See Actuarial Litigation Services Invoices, dated Apr. 25 and Apr. 28, 2006 ("Expert Invoices"), attached as Ex. B to Letter from Roger P. McTiernan, Esq. to the Court, dated Nov. 9, 2006 ("McTiernan Letter").) In a letter surreply, Defendant characterizes these invoices as insufficient to support the expert fees. (See Letter from Geri S. Krauss, Esq. to the Court, dated Nov. 16, 2005 ("Krauss Letter").) Defendant complains that the Expert Invoices are still inadequate because they do not set forth an hourly rate or hours expended. (See id.)

An award of attorneys' fees to a prevailing party under Title VII may include expert fees. See Landgraf v. USI Film Prods., 511 U.S. 244, 251, 114 S. Ct. 1483, 1490 (1994). Ireland did not submit a detailed invoice in support of his claim for a $900 expert fee. In a chart of disbursements attached to his Declaration, Ireland includes an one-line entry for $900 with the description, "Sheldon Wishnick, expert on damages. Actuary." (See Disbursements - Annie Watson, attached as Ex. 2 to Ireland Decl.) In contrast,

28

the Expert Invoices submitted by BMM consist of flat fee charges by Actuarial Litigation Service for work done by Sheldon Wishnick. (See Expert Invoices.) The invoices itemize the following services: updating the economic loss report, updating economic assumptions and actual historic earnings in previous report, and four days of testimony. Although the invoices refer to updating various sections of the expert report, they do not bill for creating the underlying report. The Court therefore infers the $900 Ireland's paid Wishnick was for the initial economic expert report on damages.

Defendant argues that an expert fee request must include the expert's hourly rate and hours spent, but cites no case law standing for this proposition. The only case cited by Defendant, Anderson v. YARP Restaurant, Inc., 94 Civ. 7543 (CSH) (RLE), 1997 WL 47785, at *5 (S.D.N.Y. Feb. 6, 1997), does not set forth such a requirement. In that case, the court stated that it would assess the reasonableness of expert fees using the same method as it had for attorneys' fees — by first multiplying the reasonable hours expended by the expert with a reasonable hourly rate. See id. However, although flat fees are usually disfavored, courts in this district have awarded attorneys fees in fee-shifting contexts where billing was done on a flat-fee basis, as long as the supporting documentation allowed the court to assess who performed the task, the nature of the task performed, and when the task was completed.

See e.g., CSC Holdings, Inc. v. Khrisat, No. 04 CV 8592 (LBS) (RLE), 2005 WL 3030838, at *5 (S.D.N.Y. Nov. 8, 2005).

The Court views Wishnick's fees as submitted by BMM as reasonable and adequately documented. The Expert Invoices are sufficiently detailed for the purposes of assessing the nature and timing of the services provided by Wishnick and the fees charged. Ireland, on the other hand, has not submitted any supporting documentation for expert fees.

The Court further notes that there can be no doubt that Wishnick prepared an expert report, and that Wishnick's report and testimony were necessary and relied on by Plaintiff in proving damages. The Court itself described the evidence presented at trial as extensive, including "(thoroughly cross-examined) expert testimony and a detailed expert report based on [Plaintiff's] financial records and the use of various projection and actuarial tools accepted and relied upon in economics." Watson, 2005 WL 2170659, at *16. Moreover, as Plaintiff explains, because of a motion by Defendant to preclude Plaintiff's expert, Wishnick had to appear on two occasions during trial. (See BMM's Reply Mem. at 7 n.2.)

Thus, the Court recommends that Plaintiff be reimbursed for BMM's expert fees in the amount of $8,212.50. Because the Court lacks an invoice from which to assess the necessity or reasonableness of the expert fees requested by Ireland, the Court

cannot recommend awarding Ireland the $900 reflected on his expert invoice. "Where the party seeking reimbursement fails to meet its burden of demonstrating the reasonableness of the amount sought, the Court may exercise its discretion to determine a reasonable fee." Carafino v. Forester, No. 03 Civ. 6258 (PK) (LDF), 2005 WL 1020892, at *2(S.D.N.Y. Apr. 29, 2005) (citation omitted). Given the absence of detail on which to evaluate Ireland's expert fee request, but recognizing that the expert prepared a report which was submitted to the Court, the Court recommends awarding Plaintiff 50% of the fees requested, reducing Ireland's costs award to $450.

B. Vague Billing

Defendant contends that BMM's billing records for $107 in travel costs are vague, and do not explain the nature of the costs and whether they were necessary. (See Def.'s Mem. at 13.) Each invoice entry for travel gives only the date, amount spent, and the description of "travel expense." (See Costs Advanced, attached as Ex. B to McTiernan Aff.) The travel expenses are relatively small, the vast majority being for $4, and the highest $8.

The Court does not agree that BMM's lack of detail is completely fatal to its recovery of travel expenses. A simple review of BMM's time sheets provides the reason for the travel for most dates on which a travel expense is claimed. The travel typically involved a BMM paralegal assistant making a trip to this Court to retrieve documents or file papers, with the $4 presumably

reflecting a round-trip fare on the subway. (See BMM Invoices.)
Travel was also expensed while this action was being tried. The
recorded travel entries, when viewed in context with BMM's
invoices, adequately inform the Court of the nature of the majority
of the travel expenses requested by BMM. Only $28 of travel
expenses do not correlate with BMM's billing records, and should be
deducted.

Defendant also objects to the bills for photocopies and
facsimiles submitted by Ireland as vague and lacking specificity.
(See Krauss Decl. ¶ 13.) The summary of Ireland's expenses lists
"Copies 3721 [at] $.25 per page = $920.25" and "Faxes 246 [at] $1
per page = $246." (See Ireland Invoices.) This summary does not
correlate the copies and facsimiles to a specific date or purpose.
However, Ireland's daily billing invoices list the number of copies
made or facsimiles sent on a particular day in connection with the
work performed on that day. As with BMM, this information is
sufficient for the Court to infer the nature of these expenses, and
conclude that no reduction is required.

C. Investigator Fees

Defendant argues that Plaintiff is not entitled to the costs
of BMM's investigator, because investigator fees are not properly
awarded as part of an application for attorneys' fees and costs.
(See Def.'s Mem. at 14.) Defendant does not cite any authority for
this proposition.

As part of Plaintiff's Reply, BMM submitted bills from its investigator, which total $5,719.19. (See Nicholas F. Stolfa Investigations, Inc., Invoices, dated Sept. 22, 2003 to June 1, 2004 ("Investigator Invoices"), attached as Ex. C to McTiernan Letter.) However, as with the expert invoices, Defendant's letter surreply contends that the supporting documentation provides too little detail as to the purpose of the hours billed by the investigator and does not specify what specific tasks were accomplished. (See Krauss Letter.)

Awards of attorney's fees under fee-shifting statutes "normally include those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987) (citing Laffey v. Northwest Airlines, Inc., 746 F.2d 4, 30 (D.C. Cir.1984). Attorneys' fees are viewed as including expenses that are incidental and necessary to the representation, provided they are reasonable. See Reichman, 818 F.2d at 283. Contrary to Defendant's contention, courts in this district have awarded the cost for retaining investigators as part of litigation-related expenses. See e.g., Irish v. City of New York, Nos. 98 Civ. 713 and 98 Civ. 9614 (BSJ) (RLE), 2004 WL 444544, at *8 (S.D.N.Y. Mar. 10, 2004); Carrero v. New York City Housing Auth., 685 F. Supp 904, 909 (S.D.N.Y. 1988).

The first two Investigator Invoices submitted by BMM are for

the investigator's drafting and service of subpoenas, which was a necessary and reasonable use of resources. The subpoena-related bills, which total $837.80, include a description of the investigator's services, detail the investigator's hours, and provide a detailed list of costs related to such service. (See Investigator Invoices at 1-2.) The third Investigator Invoice, which is for $4,881.39, substantially more than the subpoena-related invoices, includes the description of "Trial Preparation/Investigation." (Investigator Invoices at 3.) BMM has not explained why an investigator was necessary for trial preparation, and has not supported the 78 investigator hours billed at $43 per hour on the invoice. To the extent this third bill also mentions subpoena fees and accounts for mileage, copying, and mailing costs, the Court find aspects of the bill sufficiently detailed to warrant reimbursement. However, the large number of hours billed by the investigator is not supported by the time records. Thus, the Court recommends awarding BMM its litigation-related cost of its investigator, but reducing that award by $3,354.

D. Glass's Disbursements

Initially, having reviewed Glass's Invoices, the Court notes that his records reflect only $348.89 in disbursements, rather than the $433.68 requested. (See Glass Invoices.) The Court recommends that the amount awarded based on Glass's costs be reduced by

$84.79.

Defendant maintains that the expenses billed by Glass for computer legal research costs are not a "separate taxable cost," and therefore Plaintiff should not be awarded costs for Glass's research. (See Krauss Decl. ¶ 15.)  The Second Circuit has explicitly held, within the context of statutory fee shifting, that:

> use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004); see also Goldberg v. Blue Ridge Farms, Inc., No. CV-04-5098 (CPS), 2005 WL 1796116, at *6 (E.D.N.Y. July 26, 2005) ("With respect to research expenses, the Second Circuit has held that computer research expenses are reimbursable.")  Thus, Glass is entitled to $295.68 in costs for computer assisted research, as documented in his invoices. (See Glass Invoices.)  This amount reflects a deduction of an additional $16.12 for computer research done by Glass related to the Ireland/BMM fee dispute, the costs of which are not properly passed on to Defendant.  When combined with Glass's other legitimate costs, the total reimbursement for Glass's costs should be $332.77.

E. <u>Summary of Plaintiff's Application for Costs</u>

The Court has reviewed Plaintiff's counsels' declarations and invoices and is satisfied that the remainder of Plaintiff's expenses that have not been challenged by Defendant are reasonable in light of the protracted nature of this litigation. In summary, the Court recommends awarding Plaintiff costs in the amount of $17,005.32 as follows:

O&G:            $79.14

Ireland/Glass:

Costs Requested: $5,899.90

Deductions:      $(450.00) - Ireland, expert fee reduction
                 $(84.79)  - Glass, undocumented costs
                 $(16.12)  - Glass, research cost reduction

Adjusted Costs: $5,348.99

BMM:

Costs Requested: $14,959.19

Deductions:      $(28.00) - undocumented travel costs
                 $(3,354.00) - undocumented investigator costs

Adjusted Costs:  $11,577.19

### CONCLUSION

For the reasons set forth above, this Court recommends that Plaintiff be awarded $255,944.17 in attorneys' fees and costs, to be paid by Defendant.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this report to file written objections. See

also Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kimba M. Wood, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Wood. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Frank v. Johnson, 968 F. 2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: August 11, 2006
        New York, New York

Copies mailed to:

Anne Golden, Esq.
Outten & Golden, LLP
3 Park Avenue, 29th Floor
New York, NY 10016

Gary E. Ireland, Esq.
437 Madison Avenue, 29th Floor
New York, New York 10022

Roger P. McTiernan, Esq.
Barry, McTiernan & Moore
2 Rector Street

37

14th Floor
New York, NY 10006

Geri Sprung Krauss, Esq.
Hinshaw & Culbertson LLP
780 Third Avenue
New York, NY 10017